United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANFORD J WISHNEV, | Case No. 15-cv-03797-EMC |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, | Docket No. 20 |
| Defendant. | |

## I.    INTRODUCTION

Plaintiff Sanford Wishnev ("Wishnev") filed this lawsuit against Defendant the Northwestern Mutual Life Insurance Company ("Northwestern Mutual"), asserting that Defendant violated California's usury law by charging him compound interest on life insurance policy loans, without Plaintiff's written agreement that interest would be compounded.  Compl. ¶ 1.  Pending before the Court is Northwestern Mutual's motion to dismiss Plaintiff's First Amended Complaint ("Compl.") on the grounds that (1) Plaintiff lacks standing because he did not allege that he paid compound interest; (2) insurers such as Northwestern Mutual have been exempted from the usury law pursuant to article XV of the California Constitution and California Insurance Code section 1100.1.  Cal. Const., art. XV, § 1; Cal. Ins. Code § 1100.1; and (3) Plaintiff signed an agreement with Northwestern Mutual stating that interest on policy and premium loans would be compounded.  Docket No. 20 at 1 ("MTD").  For reasons stated below, the motion is **DENIED**.

## II.    FACTUAL & PROCEDURAL BACKGROUND

Plaintiff Sanford Wishnev is a California resident who purchased four life insurance policies from Defendant The Northwestern Mutual Life Insurance Company.  Compl. ¶¶ 3, 4, 12.  Life insurance policies were issued in 1967 (No. 5904999, "Policy 1"), 1969 (No. 6170006,

"Policy 2"), 1973 (No. 6728272, "Policy 3"), and 1976 (No. 7234484, "Policy 4").  *Id.* ¶12; D's RJN, Exs. A-D.  Plaintiff completed and signed an application for each policy.  *Id.* ¶ 12.  Each policy, also known as a "permanent" life insurance policy, pays a benefit on the death of the insured and accumulates a cash value.  *Id.* ¶ 5.  According to the Complaint, Northwestern Mutual's "permanent" life insurance allows the policyholder to borrow amounts from Northwestern Mutual, up to the amount of the accumulated cash value of the policy.  *Id.* ¶ 6.  Because Northwestern Mutual uses the "direct recognition" method for distributing dividends, if any loan balance exists for a given policy, the amount of the loan balance, including all accrued interest charges, reduces the amount of the annual dividend paid by Northwestern Mutual on that policy.  *Id.*  According to the Complaint, "[o]n a date after 1980," Plaintiff took out four separate loans against each of the four policies, "secured by the cash value and death benefit value" of the policy.  *Id.* ¶¶ 14-17.  Plaintiff alleges that he has never signed an agreement authorizing Northwestern Mutual to charge him compound interest, but Northwestern Mutual has added compound interest to each of the loans.  *Id.* ¶18.

The core of the Plaintiff's Complaint concerns Defendant's practice of charging compound interest on policy loans, without a Plaintiff's signed written agreement that interest would be compounded.  *Id.* ¶ 1.  Based on this practice, Wishnev asserts the following causes of action: (1) declaratory relief; (2) violation of UCL section 17200 *et seq.*; (3) violation of usury law under California Civil Code §§ 1916-2, 1916-3; and (4) unjust enrichment and money had and received.  Plaintiff filed this lawsuit in state courts as a putative class action on behalf of "[a]ll California persons as to whom Northwestern Mutual's records show that they have been charged compound interest by Northwestern Mutual on a life insurance policy and/or premium loan balances within the last four years."  Docket No. 1 (Not. of Removal, Ex. A); Compl. ¶ 22.  Northwestern Mutual removed the state court action to federal court pursuant to the Class Action Fairness Act, 28 U.S.C. §§ 1332(d).  Not. of Removal. ¶1.

///

///

///

2

**United States District Court**
For the Northern District of California

## III.   REQUESTS FOR JUDICIAL NOTICE AND REQUEST
## TO FILE SUPPLEMENTAL AUTHORITY

A.   Legal Standard

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), evidence beyond the pleading should not be considered unless: 1) the document is attached to or incorporated by reference into the complaint; or 2) the fact is subject to judicial notice pursuant to Federal Rule of Evidence 201.  *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).

Under Federal Rule of Evidence 201, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  Courts may take judicial notice of "*undisputed* matters of public record," but generally may not take judicial notice of "*disputed* facts stated in public records."  *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (emphasis in original).   Facts subject to judicial notice may be considered on a motion to dismiss. *Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

The doctrine of incorporation by reference is distinct from judicial notice.  The doctrine "permits a district court to consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the . . . pleadings.'"  *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)).  A court "may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.  The court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'"  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (internal citations omitted).  The Ninth Circuit states that "judicial notice is inappropriate where the facts to be noticed are irrelevant."  *Meador v. Pleasant Valley State Prison*, 312 F. App'x 954, 956 (9th Cir. 2009).

3

United States District Court
For the Northern District of California

B.      Defendant's Request

Without opposition from Plaintiff, Defendant requests judicial notice of five exhibits or to consider them under the doctrine of incorporation by reference: (A) A copy of Northwestern Mutual Life insurance policy no. 5904999; (B) A copy of Northwestern Mutual Life insurance policy no. 6170006; (C) A copy of Northwestern Mutual Life insurance policy no. 6728272; (D) A copy of Northwestern Mutual Life insurance policy no. 7234484; (E) A copy of a "Request for Direct Recognition" for Northwestern Mutual life insurance policy no. 5904999.  Defendant's Request For Judicial Notice ("D's RJN"), Docket No. 21.  The Court **GRANTS** Defendant's request for judicial notice of the Exhibits A-E.  *See Enger v. Allstate Ins. Co.*, 682 F. Supp. 2d 1094, 1096 (E.D. Cal. 2009) *aff'd*, 407 F. App'x 191 (9th Cir. 2010) (taking judicial notice of an insurance policy referenced in plaintiff's complaint).

Defendant has also filed motion for leave to file statement of a recent decision in *Washburn v. Prudential Ins. Co. of Am.*, No. 15-CV-04009-SI, 2015 WL 7454039 (N.D. Cal. Nov. 24, 2015).  Docket No. 30.  Good cause exists for consideration of this decision, as it addresses the issue of whether Defendant is exempt from the compound interest provision of Cal. Civ. Code § 1916-2.  The Court **GRANTS** Defendant's administrative request to submit the supplemental authority, but finds it unpersuasive.

C.      Plaintiff's Request

Without opposition from Defendant, Plaintiff asks the Court to take judicial notice of two exhibits: (1) Loan Interest Rates California Proposition 2 (1979) and (2) INTEREST RATES California Proposition 12 (1934).  The ballot materials are available online at htttp:// repository.uchastings.edu/ca_ballot_props. UC Hastings Scholarship Repository.  Plaintiff's Request for Judicial Notice ("P's RJN"), Docket No. 23.  The Court **GRANTS** Plaintiff's request for judicial notice of the Exhibits 1-2.  In this case, the documents are judicially noticeable because the Exhibits are matters of public record.  Under Federal Rule of Evidence 201, the Court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming a motion to dismiss into a motion for summary judgment.  *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004).  Ballot

4

materials are a proper subject of judicial notice.  *See Safari Club Int'l v. Harris*, No. 2:14-CV-01856-GEB-AC, 2015 WL 1956869, at *2 (E.D. Cal. Apr. 29, 2015) (taking judicial notice of the California Ballot Pamphlet because it was publicly available to voters); *People v. Snyder,* 22 Cal.4th 304, 309 n.5 (2000) (taking judicial notice of ballot arguments regarding statewide proposition as legislative history and aid for interpretation).

## IV.   <u>DISCUSSION</u>

A.   <u>Legal Standard</u>

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal."  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  While "a complaint need not contain detailed factual allegations . . . it must plead "enough facts to state a claim to relief that is plausible on its face."  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "The plausibility standard is not akin to a 'probability requirement' but it asks for more than sheer possibility that a defendant acted unlawfully."  *Iqbal*, 556 U.S. at 678.

B.   <u>California's Usury Law</u>

1.   <u>The 1918 Initiative Measure</u>

California's usury restrictions are a curious and confusing blend of the California State Constitution, statutory law, and case law pertaining to both Article XV of the California Constitution and the relevant usury statutes.[1]  California usury law began as an attempt to prevent

---

[1]  *See e.g.*, Edward Rabin & Robert Brownlie, *Usury Law in California: A Guide Through the Maze*, 20 U.C. Davis L.R. 3, 397 (1987) (stating that "California usury law is scattered throughout

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

lenders from using what was perceived to be their collective monopoly power to take advantage of borrowers. Joseph Grodin et al., The California State Constitution, The Oxford Commentaries on The State Constitutions of the United States 295 (2015). The purpose of the usury law is "to protect the necessitous, impecunious borrower who is unable to acquire credit from the usual sources and is forced by his economic circumstances to resort to excessively costly funds to meet his financial needs." *Ghirardo v. Antonioli*, 8 Cal. 4th 791, 804-05 (1994), *as modified on denial of reh'g* (Feb. 2, 1995).

In 1918, California voters approved an initiative measure that enacted a statute designated as the "usury law."[2] The usury law established 7 percent per annum as the legal rate of interest but permitted parties to establish, by written agreement, rates of interest as high as 12 percent per annum. Cal. Civ. Code § 1916-2. At issue in the instant case is the initiative's requirement that there must be a signed agreement in order to assess compound interest: Cal. Civ. Code § 1916-2 provides that "interest shall not be compounded, nor shall the interest thereon be construed bear interest unless an agreement to that effect is clearly expressed in writing and signed by the party to be charged." *Id.*

   2.   Constitutional Amendments

In 1934, California voters added Article XX, section 22 to the California Constitution. *Bisno v. Kahn*, 170 Cal. Rptr. 3d 709, 717 (Cal. Ct. App. 2014), *as modified on denial of reh'g* (May 23, 2014), *review denied* (Aug. 13, 2014). Article XX, section 22 established a maximum legal interest rate of 7 percent per annum with the proviso that, by written contract, parties may establish interest rates as high as 10 percent per annum. Cal. Const. art. XX, § 22 (1934, superseded 1976). Section 22 provided:

---

various sections of the Civil Code, the Financial Code, the Insurance Code, and the California Constitution.").

[2] Cal. Civ. Code §§ 1916-1 to -5. The initiative measure is uncodified. Witkin, Summary of California Law, Contracts §§ 455 et seq. at 498 (10th ed. 2005); 2 Cal. Affirmative Def. § 37:13 (2d ed.). Deerings, another major publisher, designates the initiative as "Deering's Uncod. Initiative Measures & Stats., 1919-1." (1973 ed.), *Ghirardo*, 8 Cal. 4th 791 at 799.

United States District Court
For the Northern District of California

> The rate of interest upon the loan or forbearance of any money, goods or things in action, or on accounts after demand or judgment rendered in any court of the State, shall be seven per cent per annum but it shall be competent for the parties to any loan or forbearance of any money, goods or things in action to contract in writing for a rate of interest not exceeding ten per cent per annum.
>
> No person, association, copartnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than ten per cent per annum upon any loan or forbearance of any money, goods or things in action.
>
> However, none of the above restrictions shall apply to [list of exempt entities].

*Carter v. Seaboard Fin. Co.*, 33 Cal. 2d 564, 578 (1949) (quoting Cal. Const. art. XX, § 22).[3] *See Penziner v. West American Finance Co.*, 10 Cal. 2d 160, 177 (1937).

A 1976 voter initiative repealed Article XX, section 22 and substituted in its place Article XV. "In 1976, former article XX of the California Constitution, which provided for a 7 percent per annum interest rate on a judgment rendered in any court of the state, was reenacted as part of article XV, section 1, of the Constitution. In 1978, the latter provision was amended to provide: 'The rate of interest upon a judgment rendered in any court of this State shall be set by the Legislature at not more than 10 percent per annum. Such rate may be variable and based upon interest rates charged by federal agencies or economic indicators, or both. [¶] In the absence of the setting of such rate by the Legislature, the rate of interest on any judgment rendered in any court of the state shall be 7 percent per annum.'" *California Fed. Sav. & Loan Assn. v. City of Los Angeles*, 11 Cal. 4th 342, 346 (1995) (citing Cal. Const., art. XV, § 1.) Cal. Const., art. XV, § 1.

In 1979, Article XV was again amended. In relevant part, as of November 6, 1979, Article XV, section 1 provides:

---

[3] Former Article XX of the California Constitution exempted nearly all institutions in the business of lending money, such as banks, building and loan associations, personal property brokers, etc. Witkin, Summary of California Law, Contracts § 456 at 499 (10th ed. 2005). The Legislature was also permitted to prescribe a maximum rate for and regulate the charges of these organizations. *Penziner*, 10 Cal.2d at 177.

Section 1. The rate of interest upon the loan or forbearance of any money, goods, or things in action, or on accounts after demand, shall be 7 percent per annum but it shall be competent for the parties to any loan or forbearance of any money, goods or things in action to contract in writing for a rate of interest:

(1) For any loan or forbearance of any money, goods, or things in action, if the money, goods, or things in action are for use primarily for personal, family, or household purposes, at a rate not exceeding 10 percent per annum; or

. . .

*No person, association, copartnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than the interest authorized by this section upon any loan or forbearance of any money, goods or things in action.*

*However, none of the above restrictions shall apply to any obligations of, loans made by, or forbearances of*, any building and loan association, or to any corporation incorporated in the manner prescribed in and operating under that certain act entitled "An act defining industrial loan companies, providing for their incorporation, powers and supervision," approved May 18, 1917, as amended, or any corporation incorporated in the manner prescribed in and operating under that certain act entitled "An act defining credit unions, providing for their incorporation, powers, management and supervision," approved March 31, 1927, as amended or any duly licensed pawnbroker or personal property broker, or any loans made or arranged by any person licensed as a real estate broker by the State of California and secured in whole or in part by liens on real property, or any bank as defined in and operating under that certain act known as the "Bank Act," approved March 1, 1909, as amended, or any bank created and operating under and pursuant to any laws of this State or of the United States of America or any nonprofit cooperative association organized under Chapter 1 (commencing with Section 54001) of Division 20 of the Food and Agricultural Code, *or any other class of persons authorized by statute*, or to any successor in interest to any loan or forbearance exempted under this article, nor shall any such charge of any said exempted classes of persons be considered in any action or for any purpose as increasing or affecting or as connected with the rate of interest hereinbefore fixed. *The Legislature may from time to time prescribe the maximum rate per annum of, or provide for the supervision, or the filing of a schedule of, or in any manner fix, regulate or limit, the fees, bonuses, commissions, discounts or other compensation which all or any of the said exempted classes of persons may charge or receive from a borrower in connection with any loan or forbearance of any money, goods or things in action.*

The provisions of this section shall supersede all provisions of this Constitution and laws enacted thereunder in conflict therewith.

Cal. Const. art. XV, § 1 (emphasis added).

United States District Court
For the Northern District of California

Pursuant to Article XV, the legislature exempted all insurance companies incorporated under article 3 of the Insurance Code from the charging of interest in excess of a permissible maximum.  Cal. Ins. Code § 1100.1;[4] *see also In re Lara*, 731 F.2d 1455, 1458 n.2 (9th Cir. 1984) (stating that "the legislature has created exemptions for corporate insurance companies, *see* Cal. Ins. Code § 1100.1, and 'consumer finance lenders.' Cal. Fin. Code §§ 24000-24010.").  In 1982, the California Legislature enacted Insurance Code § 1239, which provides that "[n]o other provision of law shall apply to policy loan interest rates unless made specifically applicable to these rates."  Cal. Ins. Code § 1239.

It is therefore undisputed that Northwestern Mutual is exempt from the maximum interest rate provisions of Article XV § 1.  The issue is whether Northwestern Mutual is also exempt from the compound interest provisions of Cal. Civ. Code § 1916-2.  In other words, did the Constitution repeal this particular statutory provision?  For the reasons stated herein, the Court concludes it did not.

C.     California Civil Code § 1916-2 Applies to Northwestern Mutual

Plaintiff alleges that "while insurers are exempt from the interest rate caps set forth in the California Constitution, they remain fully subject to the disclosure and written consent prerequisites for charging compound interest contained in the 1918 initiative."  Opp'n at 9.  Defendant, on the other hand, argues that it is exempt not only from the usury provisions of the California Constitution, but also from the compound interest provisions of Cal. Civ. Code § 1916-

---

[4] Section 1100.1 of the California Insurance Code provides:

> Pursuant to the authority contained in Section 1 of Article XV of the State Constitution, the restrictions upon rates of interest contained in Section 1 of Article XV of the California Constitution shall not apply to any obligation of, loans made by, or forbearances of, any incorporated admitted insurer.

> This section creates and authorizes incorporated admitted insurers as an exempt class of persons pursuant to Section 1 of Article XV of the Constitution.

Cal. Ins. Code § 1100.1.

United States District Court
For the Northern District of California

2. MTD at 19.  That question turns on the effect of constitutional amendments enacted after the 1918 usury law was passed.

The California Supreme Court has addressed the effect of the 1934 Amendment to the Constitution on the statutory usury law of 1918 (*i.e.*, Cal. Civ. Code §§ 1916-1 to-5) on numerous occasions.  In *Penziner*, 10 Cal. 2d at 165-66, plaintiff sued for the recovery of treble damages after alleging that he paid a usurious interest on his promissory note.  The plaintiff contended he paid $15,000 in interest and brokerage fees, a sum "that greatly exceeded 12 percent per annum." *Id*. at 167.  The plaintiff asserted his right to recover treble interest under the theory that the sale under the trust deed  constituted payment of interest.  *Id.* at 168.  The defendant argued that the sale under the trust deed did not constitute payment of interest.  *Id.*  The [District] Court of Appeal held that the sale of plaintiff's property under the trust deed and the application of the sale proceeds to the payment of the interest owed by the plaintiff to the defendant constituted payment of interest within the terms of the 1918 initiative.  *Id.*  On appeal to the Supreme Court, the defendant contended that the 1918 usury law, including its treble damages provision, was repealed by the adoption of section 22 of article XX in November 1934 which did not contain a provision for treble damages.  *Id*. at 170, 174.  Thus, in order to resolve the dispute, the Court had to address the effect of section 22 of Article XX on the 1918 usury law.  The Court held that Article XX of the Constitution did not entirely repeal the usury law of 1918 (Cal. Civ. Code §§ 1916-1 to-5).  More specifically, it was held that the usury law of 1918 (Cal. Civ. Code §§ 1916-1 to-5) was still in force except as modified by inconsistent provisions of the constitutional amendment of 1934 reducing the maximum rate of interest.  *Id*. at 171.  In particular, the treble damages provision of the 1918 usury law remained in effect.  *Id*. at 176.

Importantly, the Court stated there was a presumption against repeals, and that to overcome that presumption, "the two acts must be irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation. [] Where a modification will suffice, a repeal will not be presumed." *Penziner*, 10 Cal. 2d at 176.  The Court also noted that for the latter law to supersede the entire first law, the later act "must constitute a revision of the entire subject." *Id*.

United States District Court
For the Northern District of California

Although *Penziner* did not directly address the effect of the exemption clause in Article XV, section 1 (and its scope) because the case involved a non-exempt entity, *Penziner*'s reasoning is relevant here. Applying the rules of construction described above, the Court found that all that the constitutional amendment did was to reduce the maximum permissible rate and "to exempt *certain* enumerated classes of lenders from *certain* of its provisions; and to place in the legislature a *certain* degree of control over the fixing of charges made by the exempted groups." *Id.* at 176-77 (emphasis added). The Court in *Penziner* stated that "in so far as [the constitutional amendment] establishes *different rules from those found in the usury law, the constitutional provision is supreme — but that is the extent of its operation.*" *Penziner*, 10 Cal.2d at 176-77 (emphasis added). Moreover, "[t]he many provisions of section 2 of the usury law [Cal. Civ. Code. § 1916-2] find no counterpart in the constitutional amendment [Article XX]." *Id.* at 173. "In reading the amendment it is at once apparent that the first two paragraphs, except as to reducing the maximum rate of interest [to 10 percent from 12 percent],[5] are wholly consistent with usury law:"

> In so far as the provisions of the usury law and the constitutional provision are similar, or substantially so, it is obvious that they are not in conflict, and it is further clear that the repealing clause of the amendment did not expressly repeal the similar provisions of the usury law, inasmuch as that clause only supersedes laws "in conflict therewith." It is not all unusual to find both a statutory provision and a constitutional provision identical in their operation, and in such event both are considered as the source of the right conferred or penalty imposed.

*Id.* The Court thus concluded that the "usury law was not repealed by the adoption of the constitutional provision"). *Id.* at 178. More specifically, the Constitution did not effectuate a wholesale repeal: Article XX, section 22 only repeals or supersedes "all provisions of this constitution and laws enacted thereunder in conflict therewith." *Id.* at 174.

Following *Penziner*, in *Nuckolls v. Bank of California, Nat. Ass'n*, 10 Cal.2d 266, 277 (1937), the Supreme Court reiterated that by the adoption of Article XX "the Usury Law of 1918

---

[5] "Section 1 [Cal. Civ. Code. § 1916-1] provides that the rate of interest upon the loan or forbearance of money, or upon California judgments shall be 7 per cent per annum, but it shall be competent for the parties to contract for a rate of interest not to exceed 12 per cent per annum, if such contract is in writing." *Penziner*, 10 Cal. 2d 160 at 171.

had not been repealed, but that all the provisions of said Usury Law not in conflict with the

provisions of said constitutional amendment were in full force and effect."  It stated:

> A considerable portion of the briefs of the parties hereto and those
> of certain *amici curiae* filed herein was devoted to the question as to
> whether the Usury Law enacted by vote of the people, November,
> 1918, under the initiative provision of the Constitution of this state
> had been repealed by the adoption of article XX, section 22 of said
> Constitution. This question has been given consideration by this
> court in the case of *Penziner v. West American Finance Co., ante,* p.
> 160 [74 Pac. (2d) 252]. In our decision of the appeal in that case, we
> held that by the adoption of said section of the Constitution the
> Usury Law of 1918 had not been repealed, but that all the provisions
> of said Usury Law not in conflict with the provisions of said
> constitutional amendment were in full force and effect. It is not
> necessary to repeat here the discussion and our conclusion contained
> in our opinion in the case of *Penziner v. West American Finance
> Co., supra*.

*Nuckolls*, 10 Cal. 2d at 276-77.  *See In re Fuller*, 15 Cal.2d 425, 434 (1940) (the Supreme Court

similarly concluded, "The effect of the constitutional amendment of 1934 upon the Usury Law

was to reduce the maximum permissible interest rate from 12 per cent to 10 per cent, but not to

otherwise affect its requirements as to those classes of lenders which were specifically exempted

from that regulation."); *Barnes v. Hartman*, 246 Cal. App. 2d 215, 220 (Cal. Ct. App. 1966) ("The

1934 constitutional provision did not revise or repeal the entire subject encompassed within the

Usury Law.  Insofar as it established or created different language from that in the Usury Law, the

Constitutional provision is supreme and controlling.  The constitutional provisions superseded any

provisions of the Usury Law which are in conflict therewith."); *Fenton v. Markwell & Co.*, 11 Cal.

App. 2d Supp. 755, 761 (Cal. App. Dep't Super. Ct. 1935) ("we might well hold that the usury law

remained in force after the constitutional amendment . . . .").

      Defendant's reliance on *Carter* in arguing that the 1918 usury law as repealed is

misplaced.  In *Carter*, 33 Cal. 2d at 580, the Court examined the scope of Article XX, the

predecessor to Article X~~X~~V.  It construed the "none of the above restrictions" language governing

the scope of the exemption clause in Article XX as covering the maximum rate restrictions in the

two preceding paragraphs in the same Article.  Specifically, the Court addressed the following

provision of Article XX:

"The rate of interest upon the loan or forbearance of any money, goods or things in action, or on accounts after demand and judgment rendered in any court of the State, shall be seven per cent per annum but it shall be competent for the parties to any loan or forbearance of any money, goods or things in action to contract in writing for a rate of interest not exceeding ten per cent per annum.

"No person, association, copartnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than ten per cent per annum upon any loan or forbearance of any money, goods or things in action.

"However, none of the above restrictions shall apply to any building and loan association" or to industrial loan companies or to credit unions or to "any duly licensed pawnbroker or personal property broker," or to any bank operating under state or federal laws or to any nonprofit cooperative association or to any agricultural cooperative or to any corporations securing money or credit from any federal intermediate credit bank under the Agricultural Credits Act of 1923, "nor shall any such charge of any said exempted classes of persons be considered in any action or for any purpose as increasing or affecting or as connected with the rate of interest hereinbefore fixed. The Legislature may from time to time prescribe the maximum rate per annum of, or provide for the supervision, or the filing of a schedule of, or in any manner fix, regulate or limit, the fees, bonus, commissions, discounts or other compensation which all or any of the said exempted classes of persons may charge or receive from a borrower in connection with any loan or forbearance of any money, goods or things in action.

*Id.* at 578 (quoting Cal. Const. art. XX, § 22).

In *Carter*, the plaintiff executed a note and mortgage covering the purchase price of four vehicles in favor of the defendant, a licensed personal property broker. *Id.* at 568. When the plaintiff defaulted on the loan, the plaintiff sued and alleged that the defendant was charging 1 1/2 percent per month on the unpaid balance of the loan. *Id.* at 574. Plaintiff argued that the words "above restrictions" appearing at the beginning of the third paragraph of the exemption clause in Article XX, Section 22 applied only to the prohibitive language of the second paragraph. *Id.* at 578. If the Court confined the phrase "none of the above restrictions" to the second paragraph of Section 22, then personal property brokers who are exempt from the "above restrictions" would have been subject to the 10 percent restriction in the first paragraph as long as the legislature had not established a different limitation to govern their class. *Id.* The Court refused to limit the language of the exemption clause only to the second paragraph because "the limitations specified

13

in both the first and second paragraphs fall within the general classification of 'restrictions' as that word is used in [the 'none of the above restrictions' language] of the third paragraph." *Id.* at 579-80.  The Court concluded: "[t]he rational construction of the language demands that [the words 'above restrictions'] be read as applicable to both." *Id.* at 580.  In discussing whether the phrase "none of the above restrictions" applies both to the first and second paragraphs, the Court was concerned only with the maximum interest rates contend in those two paragraphs:

> [T]he transfer to the Legislature of the power to legislate on the subject of rates of interest and charges of the exempted classes by the last sentence of  the third paragraph is entirely inconsistent with the idea that the inflexible percentages fixed in the first paragraph are to be applied to the exempted classes. . . . The purpose of the language appearing at the end of the first sentence of the third paragraph: "nor shall any such charge of any said exempted classes of persons be considered in any action or for any purpose as increasing or affecting or as connected with the rate of interest hereinbefore fixed," was to assure that no charges which might in the future be established by the Legislature respecting any of the exempt classes, and that no charges made by exempt lenders prior to the establishment of charges by the Legislature, would affect or be connected with rates of interest fixed in the first and second paragraphs as to nonexempt lenders.

*Id.*  Indeed, throughout the opinion the Court repeatedly referred to "maximum interest rates":

> [B]y virtue of this amendment the money lenders specifically named, including personal property brokers, are exempt from the *maximum rate of interest* therein fixed, and that the Legislature has the right to regulate their rates and charges.  *Id*. at 582.
> The foregoing history is a demonstration that it was the purpose of the constitutional amendment of 1934 to free the Legislature from the restraints imposed by inflexible usury provisions so that *interest* and charges more appropriate to business conditions peculiar to each of the exempted classes could be established.  *Id.*
> Since the adoption of the constitutional amendment in 1934 there was "no law of this state which limits *the rate of interest* which may be charged by personal property brokers."  *Id*. (quoting *Matulich v. Marlo Investment Co.*, 7 Cal. 2d 374, 376 (1936)).
> "[T]he legislature was given power to prescribe *the maximum rate of interest* to be charged in connection with loans made by [certain organizations and individuals]."  *Id*. at 582-83. (quoting *Wolf v. Pac. Sw. Disc. Corp.*, 10 Cal. 2d 183, 184 (1937).
> In the 1939 session of the Legislature 24 bills were introduced pertaining to *interest rates*.  *Id*. at 583.  Section 17 of the revised [Personal Property Brokers Act] captioned "*Maximum Rate* of

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> Charge" fixed *the maximum rate of interest* and charges in
> connection with loans of $300 or less."

*Id*. (emphasis added).  The Court in *Carter* did *not* address whether the required disclosures and consent provisions for compound interest in the 1918 initiative were repealed by the constitutional amendment establishing Article XX.  In fact, the Court mentions compounding interest only once, an incidental reference in its opinion.  *Id*. at 575.

Moreover, *Carter*'s reference to the ballot underscores the Court's narrow focus: "[the ballot argument] is a clear and positive representation that the amendment if adopted would not fix the interest rates and charges for the exempted classes and would vest in the Legislature the power to regulate the business of those classes including the power to fix such rates of interest and charges."  *Id*. at 581.

Finally, the Court in *Carter* did not discuss the presumption against repeal in *Penziner* and in fact never refers to (or purports to overrule) *Penziner*.

Accordingly, *Penziner* remains good law even after *Carter*.  Whether Article XV, Section 1 repeals the California Civil Code § 1916-2's requirement of disclosure of and consent to compounded interest as applied to insurance companies, a class of lenders exempt pursuant to the Art. XV and California Insurance Code §§ 1101.1 and 1239, must be viewed in light of the presumption against wholesale repeal under *Penziner* and its progeny, a presumption left untouched by *Carter*.  So viewed, the Court concludes Civil Code Section 1916-2 was not repealed and thus continues to apply to insurance companies such as Northwestern Mutual.

As noted above, California Civil Code § 1916-2 provides that "in the computation of interest upon any bond, note, or other instrument or agreement, interest shall not be compounded, nor shall the interest thereon be construed to bear interest unless an agreement to that effect is clearly expressed in writing and signed by the party to be charged therewith."  Cal. Civ. Code § 1916-2.  Article XV, section 1 only repeals or supersedes "all provisions of [the] constitution and laws enacted thereunder in conflict therewith."  *Penziner*, 10 Cal.2d 160 at 174.  As *Penziner* held, to overcome the presumption against repeal, "the two acts must be irreconcilable, clearly

1   repugnant, and so inconsistent that the two cannot have concurrent operation. [] Where a

2   modification will suffice, a repeal will not be presumed." *Penziner*, 10 Cal. 2d at 176.

3          Interpreting Article XV's exemption clause as exempting life insurance companies from

4   only the maximum interest rates set forth in the 1918 Initiative and subsequent constitutional

5   amendments and subjecting them to legislative regulation as to such rates would not present an

6   irreconcilable conflict between Article XV, Section 1 and the 1918 Initiative.  The disclosure

7   requirement that compounding interest "be clearly expressed in writing and signed by the party to

8   be charged therewith" in order to be effective can operate in tandem with the subsequently enacted

9   regime of legislative regulation of maximum interest rates.  The disclosure requirement (under §

10  1916-2) is distinct from the setting of absolute limits on maximum interest rates.

11         Nor is there an irreconcilable conflict between the disclosure requirement of § 1916-2 and

12  the last sentence of Article XV's exemption clause which states: "The Legislature may from time

13  to time prescribe the maximum rate per annum of, or provide for the supervision, or the filing of a

14  schedule of, or in any manner fix, regulate or limit, the fees, bonuses, commissions, discounts or

15  other compensation which all or any of the said exempted classes of persons may charge or

16  receive from a borrower in connection with any loan or forbearance of any money, goods or things

17  in action."  Cal. Const., art. XV, § 1; Docket No. 26 at 10-11 ("Reply").  While the Legislature is

18  conferred the authority to regulate "fees, bonuses, commissions, discounts or other compensation,"

19  as well as maximum interest rates, Cal. Const., art. XV, § 1, these terms can reasonably be

20  construed as reaching such things as loan fees and points, not compound interest.  This is

21  especially so as the second paragraph of Article XV makes reference to those same terms as

22  something "more than the interest authorized by this section."  *Id.*  This suggests "fee, bonus,

23  commission, discount or other compensation" are items distinct from interest, compound or

24  otherwise.  Moreover, while the term "other compensation" appears to embody a degree of

25  elasticity, it likely was meant to include other terms of compensation a lender might receive, such

26  as an interest in oil and minerals in certain lands as part of the loan deal. *See, e.g., Heald v. Friis-*

27  *Hansen*, 52 Cal.2d 834, 836 (1959).

28         Moreover, this construction is consistent with "none of the above restrictions" language

United States District Court

For the Northern District of California

1    contained in Article XV.  In particular, Art XV, § 1's provision that "none of the above

2    restrictions shall apply to" loans made by those exempt classes of lenders – here including

3    insurance companies – directly follows provisions setting maximum interest rates (*e.g.*, at 7% or

4    10%).  The "above restrictions" language does not refer to any provision governing the disclosure

5    of compounding interest rates.  *Cf. Carter* 33 Cal. 2d at 580 (construing "none of the above

6    restrictions" language as applying to two preceding paragraphs governing maximum interest rates

7    in Article XX).  Thus, as in *Penziner* that "[t]he many provisions of section 2 of the usury law

8    [Cal. Civ. Code. § 1916-2] find no counterpart in the constitutional amendment."  *Penziner*, 10

9    Cal. 2d at 173, and are thus not subject to the constitutional repeal.

10           Although broad statements of the legislative purpose in exempting classes of lenders from

11   the usury provisions allowing the legislature to deal with the economics of each can be found (*see*

12   *Carter v. Seaboard Finance Co.*, 33 Cal. 2d 564 (1949), the California Supreme Court has

13   emphasized the effect of the constitutional provision exempting certain institutions from usury

14   provisions was to free those institutions from inflexible restrictions on maximum interest rates,

15   allowing the legislature to regulate those rates.  *See West Pico Furniture Company v. Pacific*

16   *Finance Loans*, 2 Cal.3d 594, 614 (1970) (section 22 of article XX 'operates to exempt those

17   classes from the restrictions in the Usury Law.' [] As to these exempt classes, there are no

18   restrictions on the *rates of interest* charged unless the Legislature so provides.") (emphasis added)

19   (quoting *Heald v. Friis-Hansen*, 52 Cal. 2d 834, 838 (1959)).  The Court in *Penziner* characterized

20   the exemption as only from "certain" not "all" provisions, and it placed in the legislature "certain"

21   not "complete" degree of control.  *In re Fuller,* 15 Cal.2d 425 (1940) (with the "not" accidentally

22   omitted) is in accord.[6]

23   _____

24   [6] Defendant cites an unpublished decision, *Thomason v. Bateman Eichler, Hill Richards, Inc.*, 245
     Cal. Rptr. 319, 321 (Cal. Ct. App. 1988) (depublished opinion) to the contrary.  *See Employers*

25   *Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 120 n.8 (9th Cir. 2003) ("[W]e may
     consider unpublished state decisions, even though such opinions have no precedential value.").  In

26   *Thomason*, the defendant charged compound interest on loans made to its margin account
     customers.  *Id*. at 319.  The plaintiffs sued under Cal. Civ. Code § 1916-2.  *Id*.  The defendant

27   argued that section 25211.5 of the Corporations Code[6] exempted the defendant from the
     compound interest requirement of Cal. Civ. Code § 1916-2.  *Id*. at 320.  The Court of Appeal held

28   "that Article XX essentially superseded, in its entirety, the 1918 Usury law [i.e., Cal. Civ. Code. §
     1916-2] insofar as it applied to exempt lenders." *Id*. at 322.  In doing so, the court held that a

                                                    17

1        Moreover, the ballot argument in favor of the proposition which amended Article XV in

2   1979 (*see* P'S RJN, Exs. A, B) reveal the concern of the proposition was with the restrictions on

3   maximum interest rates contained in the California Constitution.  The ballot arguments as to both

4   the 1934 and especially the 1979 amendments focus on maximum interest rates, not on

5   compounding of interest or disclosure requirements therefor.[7]

6        Northwestern Mutual cites the fact that in 1982, the Legislature enacted Article 5.5 of the

7   Insurance Code, entitled "Life Insurance Policy Loans."  *See* Cal. Ins. Code § 1230 *et seq*.

8   California Insurance Code section 1239 provides: "[n]o other provision of law shall apply to

9   policy loan interest rates unless made specifically applicable to these rates."  Cal. Ins. Code §

10  1239.  However, legislative acts passed *after* the passage of the 1979 constitutional amendment at

11  issue are not an interpretive tool of the constitutional amendment.

12       The Court acknowledges that in *Washburn v. Prudential Ins. Co. of Am.*, No. 15-CV-

13  04009-SI, 2015 WL 7454039, at *7 (N.D. Cal. Nov. 24, 2015), Judge Illston of this Court held

14  that "[t]he California Constitution vests in the California Legislature the sole authority to regulate

15  the charging of compound interest by exempt classes."  Therefore, Judge Illston found admitted

16  insurers are exempt from the entirety of California Civil Code § 1916-2.  *Id*.  In doing so, the court

17  heavily relied on *Carter v. Seaboard Finance Co.*, *supra*, 33 Cal. 2d 564 (1949).  "*Carter* found

18

---

19  "conclusion that [the defendant] was bound by the [1918's Initiative's] compound interest
20  requirements would be inconsistent with the Legislature's authority to regulate 'in any manner'
    the interest charged by exempt lenders."  *Id*. at 323.  For the reasons stated above, the Court finds
21  this unpublished decision unpersuasive.

22  [7] To illustrate, one argument in Favor of Proposition 2 in 1979 states:

23          An important fact is that this constitutional provision *retains* present
            provisions enabling a control by law on "the maximum rate per
24          annum" and on fees or other compensation – a vital control against
            abuse.  Proposition 2 removes the arbitrary, inflexible, and
25          unrealistic *constitutional* limits on nonconsumer loans and on
            exemptions which have severely limited the flow of money to
26          California to buy homes, create job opportunities, and for other
            purposes.

27  Voter Information Guide for 1979 at 12, Special Election (1979);
28  http://repository.uchastings.edu/ca_ballot_props/865 (emphasis in original); P's RJN Ex. 1.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

that the regulation of exempt classes' businesses is 'entirely within the control of the Legislature,' which means that the authority granted to the California Legislature to 'in any manner fix, regulate or limit, the fees, bonuses, commissions, discounts or other compensation" charged by exempt classes includes the ability to charge compound interest." *Washburn*, 2015 WL 7454039 at *7. (citing *Carter*, 33 Cal.2d at 582; Cal. Const., art. XV, § 1).

While reasonable minds can differ on the question, the Court believes that *Washburn*'s reliance on *Carter* is misplaced. As noted above, *Carter* did not address the issue of compounding interest, only the restrictions on maximum interest rates, which was clearly within the core of the constitutional amendments. Second, *Carter* did not discuss or purport overrule *Penziner* which established a presumption against repeal which counsels against a broad construction of the constitutional amendments.

Thus, Article XV, while exempting certain lenders like Northwestern Mutual from maximum interest rate provisions of the 1918 Initiative and the Constitution and allowing the Legislature to set those maximum rates and regulate additional fees (like loan points), did not repeal the California Civil Code section 1916-2's requirement that in order for the lender (even a lender that falls into the class of lenders exempt from the maximum interest provisions) to assess compound interest, the lender must obtain a signed agreement from the borrower.

D.      Application of California Civil Code § 1916-2

Plaintiff signed an application for four life insurance policies. Compl. ¶ 12; D's RJN, Exs. A-D. These applications did not contain the provision for compounding. D's RJN, Exs. A-D. The policies subsequently issued to Plaintiff do provide for compounding of interest. They state:

> Loan Interest:
>
> > Policy and premium loans shall bear interest at the rate of 5% per annum. Interest on policy loans shall accrue from the date of the loan and on premium loans from the premium due date. Interest shall be payable annually. Unpaid interest shall be added to and become part of the loan and shall bear interest on the same terms.

D's RJN, Ex. A at 7.

The insurance policies also state:

The Contract:

> This policy and the application, a copy of which is attached when issued, constitute the entire contract.  All statements in the application shall, in the absence of fraud, be deemed representations and not warranties.  No statement shall void this policy or be used in defense of a claim under it unless contained in the application.

D's RJN, Ex. A at 7.

Defendant argues that there was no violation of Cal. Civ. Code. § 1916-2 because Plaintiff "did, in fact, sign an agreement with Northwestern Mutual stating that interest on policy and premium loans would be compounded – i.e., the life insurance contract, which is comprised of the policy and the application signed by Plaintiff."  MTD at 19.  For this proposition Defendant relies on California Insurance Code section 10113[8] and *Burr v. Equitable Life Ins. Co. of Iowa*, 84 F.2d 781 (9th Cir. 1936).  Plaintiff argues, on the other hand, that he did not sign such an agreement because the policy was issued *after* he signed and submitted the application; he therefore did not "sign" an agreement to pay compounded interest.

Defendant's reliance on *Burr* is misplaced.  In *Burr*, the court held that an *application* for term insurance, a term policy, and a converted policy constituted a single contract.  *Burr*, 84 F.2d at 784.  In that case, the insured executed and delivered to the defendant a written request for

---

[8] Cal. Ins. Code § 10113 provides:

> Every policy of life, disability, or life and disability insurance issued or delivered within this State on or after the first day of January, 1936, by any insurer doing such business within this State shall contain and be deemed to constitute the entire contract between the parties and nothing shall be incorporated therein by reference to any constitution, by-laws, rules, application or other writings, of either of the parties thereto or of any other person, unless the same be indorsed upon or attached to the policy; and all statements purporting to be made by the insured shall, in the absence of fraud, be representations and not warranties. Any waiver of the provisions of this section shall be void.

Cal. Ins. Code § 10113.

conversion of the term policy into an ordinary life policy.  *Id*. at 781.  The defendant made a conversion and attached to the policy the original application and medical report.  *Id.*  The court explained: "It seems to us quite clear that under the facts stated the new policy was but a continuation of the same insurance contract.  It was based on the old application and the old medical examination, and the new terms *were in strict accord with the provisions of the first policy*, granting to the insured the right to make just such a selection to take the place of the original form."  *Id*. at 782 (emphasis added).

Here, however, the terms of the application did *not* contain the compounding provision found in the policy.  Nothing in the application authorizes the inclusion in the policy of a provision for compounded interest.  There was no predicate to incorporate into the policy.  *Burr* does not address the effect of a policy received *after* the signed application is submitted.

Other decisions of the California Supreme Court emphasize the strict requirements that a provision for compounding interest be clear, written and signed by the borrower.  In *McConnell v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 21 Cal. 3d 365, 370 (1978), a margin agreement[9] provided: "The monthly debit balance in my account(s) shall be charged, in accordance with your usual custom with interest at a rate which shall include the average rate paid by you on your general loans during the period covered by such balances respectively, and any extra rates caused by market stringency, together with a charge to cover your credit service and facilities."  Defendant compounded the interest monthly.  *Id*.  The California Supreme Court held that the agreement's reference to defendant's "usual custom" did not demonstrate that the parties "clearly expressed in writing" that the defendant could charge compound interest.  *Id*. at 375.

On a subsequent appeal, defendant argued that it sent to its customers various documents, such as monthly statements that provided notice that compounded interest was being charged on customers' accounts.  *McConnell v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 33 Cal. 3d 816, 822 (1983) ("*McConnell II*").  The court rejected this argument:

---

[9] Agreement for an account offered by brokerages that allows investors to borrow money to buy securities. http://www.investopedia.com/terms/s/security.asp.

> Even if we were to concur with the dubious proposition that these documents clearly provided notice that defendant was charging compound interest on the accounts, their receipt would not satisfy the unequivocal requirement of section 2 that the borrower must agree in writing to pay compound interest. As we have seen, the trial court determined that the only agreement signed by class members was the customer agreement.

*McConnell II*, 33 Cal. 3d at 823.  Importantly, the Court observed:

> [Cal. Civ. Code. § 1916-2] is designed to protect borrowers, prevent the unjust enrichment of lenders, and deter lenders from violating its terms.  It achieves the first of these goals by providing that a lender who intends to charge compound interest *must express that intention in clear terms* and, in order to assure that the language employed by the lender meets this requirement and *that the borrower agrees to pay compound interest*, it prescribes that *the provision for compounding must be in writing and signed by the borrower*.

*McConnell II*, 33 Cal. 3d at 822, 662 P.2d 916, 920 (1983) (emphasis added).

The specific requisite that "the provision for compounding" be in writing and "signed by the borrower" was not met here.  The only document that Wishnev signed was an application.  Just like the agreement in *McConnel II*, the application did not provide notice that defendant was charging compound interest on life insurance policy and premium loans.  Because plaintiff did not sign any of the policies, Northwestern Mutual failed to comply with California Civil Code § 1916-2.

E.   <u>Remedy for Violation of California Civil Code § 1916-2</u>

Defendant contends that Plaintiff failed to state a cause of action under Cal. Civ. Code. § 1916-2.  Docket No. 26 at 3 ("Reply").  Defendant also argues that Cal. Civ. Code. § 1916-2 is a "remedial provision," therefore is does not provide a separate remedy.  *Id.*  This is because section 1916- 2 states: "[a]ny agreement or contract of any nature in conflict with [Cal. Civ. Code. § 1916-2] shall be null and void . . . and no action at law to recover interest in any sum shall be maintained . . . ."  Cal. Civ. Code. § 1916-2.

In *Penziner*, the Court stated: "The right to recover treble damages given by section 3 of the Usury Law is a purely statutory remedy, not existing at common law, and is likewise a penalty imposed upon the lender." *Penziner*, 10 Cal. at 170.  However, the statutory penalty is cumulative only, and does not abrogate any common-law remedy, specifically, the recovery of money paid

under an illegal provision of a contract. *Stock v. Meek*, 35 Cal. 2d 809, 816 (1950); *Westman v. Dye*, 214 Cal. 28, 37 (1931) ("In some jurisdictions where a remedy is given by the statute, as there is in the Usury Act of this state, the statutory remedy is exclusive, and the borrower is relegated to the pursuit of that remedy and is precluded from any further or additional recovery. However, the better opinion and that supported by the weight of authority is that the statutory remedy is cumulative only and as not abrogating the common-law remedy.").

Borrowers may therefore bring an action for money had and received to recover usurious interest paid (if any) within two years of the suit. *Meek*, 35 Cal.2d at 817. For example, in *McConnell I*, Plaintiff among other causes of action, alleged violation of Cal. Civ. Code § 1916-2. *McConnell I*, 21 Cal. 3d at 370-71. Plaintiff also sought recovery of interest charged during the period in question and for treble damages. *Id*. at 371. The Court stated that plaintiffs' complaint stated a cause of action alleging that defendant unlawfully charged compound interest because defendant's customer's agreement did not on its face clearly express that defendant would charge compound interest on margin agreements. *Id*. at 380. Then, in *McConnell II*, the Court explained: "the first cause of action prays for recovery of the interest charges paid by plaintiffs, as provided in section 2, while the second seeks treble damages under section 3 of the Usury Law." *McConnell II*, 33 Cal. 3d at 822 n.5. Since Cal. Civ. Code § 1916-3 is cumulative to the other remedies for usury, defendant stated a cause of action under Cal. Civ. Code § 1916-2. Hence, a claim and a remedy therefor is stated by Plaintiffs.

F.   Claim for Violation of California Civil Code § 1916-3

Plaintiff asserts that "pursuant to Section 1916-3, plaintiff and class members are . . . entitled to repayment from Northwestern Mutual of treble the amount of all interest paid, if any, within one year past, or paid hereafter prior to the entry of judgment in this Action." Compl. ¶ 41.

Cal. Civ. Code § 1916-3 provides:

> Every person, company, association or corporation, who for any loan or forbearance of money, goods or things in action shall have paid or delivered any greater sum or value than is allowed to be received under the preceding sections, one and two, may either in person or his or its personal representative, recover in an action at law against the person, company, association or corporation who

United States District Court
For the Northern District of California

> shall have taken or received the same, or his or its personal
> representative, treble the amount of the money so paid or value
> delivered in violation of said sections, providing such action shall be
> brought within one year after such payment or delivery.

Cal. Civ. Code § 1916-3.

According to the Complaint, "Northwestern Mutual has assessed compound interest on the loan balances for each of plaintiff's policies." Compl. ¶ 20. Defendant alleges that Plaintiff never paid compound interest at any point in time. MTD at 6. According to Defendant, "[a] life insurance policy or premium loan, unlike a consumer loan, does not have to be repaid, either in part or in whole, while the policy is in force." MTD at 6 n.3.

A penalty of treble interest is recoverable where usurious interest has already been collected. Cal. Civ. Code § 1916-3(a); *Westman v. Dye*, 214 Cal. 28, 35 (1931); *Taylor v. Budd* 217 Cal. 262, 266 (1933); Witkin, Contracts , § 469 at 512 (10th ed. 2005). *See also Liebelt v. Carney*, 213 Cal. 250, 255 (1931) (stating that "[Cal. Civ. Code § 1916-3], by its terms, limits the suit for penalties to a debtor who has paid, against the party who is entitled to receive, and does actually receive, the payment from him.").

Despite the fact that Plaintiff conceded that thus far he has not paid unlawful interest to Northwestern Mutual (at least in a conventional sense), Plaintiff has effectively "paid" the compounded interest by receiving less dividend that it otherwise would have received but for the compounded interest. As noted above, under the "direct recognition" method for distributing dividends, the increase in loan balance due to compounding of interest reduced the dividend paid to Plaintiff by Northwestern Mutual under the policy. [10] Because there is a real pocketbook injury,

---

[10] Plaintiff's complaint specifically alleges that accrued compound interest "is always eventually paid by the policyholder":

> "Because Northwestern Mutual uses the 'direct recognition' method
> for distributing dividends, if any loan balance exists for a given
> policy, the amount of the loan balance, including all accrued interest
> charges, reduces the amount of the annual dividend which otherwise
> would be paid by Northwestern on that policy. Thus, if any given
> loan balance is inflated over its proper and lawful amount, the
> policyholder suffers concrete financial injury from the inflated
> balance each year that the balance is shown on Northwestern
> Mutual's records, even before the policyholder pays the inflated
> amount. The policyholder can (but need not) repay the loan in cash

24

1    Plaintiff has standing under Cal. Civ. Code § 1916-3.

2    G.      Standing Under the UCL

3          In his second cause of action, Plaintiff seeks restitution under the "unlawful" prong of the

4    California Unfair Competition Law ("UCL"), Cal. Bus. & Profs. Code § 17200 *et seq.*  Compl. ¶

5    32.  Defendant argues that Plaintiff lacks standing to sue under the UCL because he has not

6    alleged the loss of any money or property as a result of Defendant's allegedly unfair or unlawful

7    business practices.  MTD at 9.

8          California's UCL prohibits any "unlawful, unfair or fraudulent business act or practice."

9    Cal. Bus. & Prof. Code § 17200.  The UCL incorporates other laws and treats violations of those

10   laws as unlawful business practices independently actionable under state law.  *Chabner v. United*

11   *Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000).  Violation of almost any federal, state

12   or local law may serve as the basis for a UCL claim.  *Saunders v. Superior Court*, 27 Cal. App. 4th

13   832, 838-39 (1994).  The unlawful prong of the UCL "borrows violations of other laws and treats

14   them as unlawful practices," which the UCL then "makes independently actionable."  *Cel-Tech*

15   *Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  "To state a

16   cause of action based on an unlawful business act or practice under the UCL, a plaintiff must

17   allege facts sufficient to show a violation of some underlying law."  *Prakashpalan v. Engstrom,*

18   *Lipscomb and Lack*, 223 Cal. App. 4th 1105, 1133 (2014) ("unlawful practices are practices

19   'forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory or

20   court-made.' ").  Plaintiff borrows Defendant's violation of California Civil Code section 1916-2

21   _____

22           or by designating some or all of the cash value of the policy for
             repayment.  To the extent that the insured dies with a loan balance
23           remaining, Northwestern Mutual reduces the amount it pays as death
             benefits by the loan balance.  If the policy is cancelled prior to death,
24           the "surrender value" (i.e. the accumulated cash value minus any
             fees or related charges) paid to the policyholder is reduced by the
25           amount of any loan balance.  Thus, the total amount of any loan
             balance, including accrued interest, is *always* eventually paid by the
26           policyholder or, if he or she dies with a balance, the beneficiary of
             the insurance.  Northwestern Mutual charges interest on the loan
27           balance on an annual basis."

28   Compl. ¶ 6.

                                               25

United States District Court
For the Northern District of California

1    to support his theory of liability under the unlawful prong.  Because Plaintiff plausibly alleged a

2    cause of action for violation of Cal. Civ. Code. § 1916-2, Plaintiff also alleged violation of the

3    "unlawful" prong of the UCL.

4        In the class action context, standing under the UCL must be established as to the class

5    representative.  *In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009).  Thus, the class

6    representative must demonstrate that he or she "suffered injury in fact and has lost money or

7    property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204.  A plaintiff suffers

8    an injury in fact for purposes of prudential standing under the UCL when he or she has: (1)

9    expended money due to the defendant's acts of unfair competition (2) lost money or property or

10    (3) been denied money to which he or she has a cognizable claim.  *Hall v. Time Inc.*, 158 Cal.

11    App. 4th 847, 854-55 (Cal. Ct. App. 2008).  The "injury in fact" and "lost money or property"

12    requirements of section 17204 overlap.  *See Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th

13    1305, 1348 (2009). The "as a result of" language of section 17204 imposes a causation

14    requirement.  *See Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010) ("[the UCL]

15    requires a 'causal connection' between [the defendant]'s alleged UCL violation and her injury in

16    fact"); *Troyk*, 171 Cal. App. 4th at 1348 ("the phrase 'as a result of' connotes an element of

17    *causation* (i.e., [plaintiff] lost money because of [defendant]'s unfair competition")).

18        Here, Plaintiff's allegations support standing under the UCL.  As discussed above, Plaintiff

19    pleads facts stating that as the result of Northwestern Mutual's practices to charge compound

20    interest, Plaintiff suffered an economic injury; specifically, the amount in dividends paid to

21    plaintiff on life insurance policies have been reduced as a result of the compounding of interest

22    under the direct recognition method for distributing dividends, thus causing plaintiff actual

23    damages each year.  Compl. ¶¶ 19, 20.  Such allegations are sufficient to plead the requisite injury

24    in fact and loss of money or property for purposes of standing under the UCL.  Accordingly, the

25    Court **DENIES** Defendant's motion on this ground.

26    H.     <u>Money Had and Received and Unjust Enrichment</u>

27        Plaintiff's fourth cause of action is for money had and received and unjust enrichment.

28    Compl. ¶¶ 42-49.  "The foundation of an action for conversion on a money had and received count

United States District Court
For the Northern District of California

1  is the unjust enrichment of the wrongdoer, and in order for plaintiff to recover in such action she

2  must show that a definite sum, to which she is justly entitled, has been received by defendant."

3  *Bastanchury v. Times-Mirror Co.*, 68 Cal. App. 2d 217, 236 (Cal. Ct. App. 1945).  A plaintiff

4  must plead that the defendant "is indebted to the plaintiff in a certain sum for money had and

5  received by the defendant for the use of the plaintiff."  *Schultz v. Harney*, 27 Cal. App. 4th 1611,

6  1623 (1994) (citation and internal quotation marks omitted).  "The cause of action is available

7  where . . .  the plaintiff has paid money to the defendant pursuant to a contract which is void for

8  illegality."  *Id.*

9       Plaintiff bases his claim for money had and received upon the allegation that

10  "Northwestern Mutual has become indebted to plaintiff and class members for all amounts as are

11  necessary to render Northwestern Mutual's payments of dividends to them equal to what would

12  have been calculated under Northwestern Mutual's actual formula for such payment had no

13  compound interest been reflected in the loan balances of plaintiff and class members."  Compl. ¶

14  45.  The question is whether a "definite sum" to which Plaintiff is justly entitled is "ascertainable."

15  *French v. Robbins*, 172 Cal. 670, 679 (1916).  As alleged by Plaintiff, although an accounting

16  exercise must be undertaken, it is ascertainable.  Consequently, the Court denies the motion to

17  dismiss this cause of action.

18  I.     Money Had and Received and Unjust Enrichment

19       Plaintiff's first cause of action seeks a declaration of rights with respect to the legality and

20  enforceability of Northwestern Mutual's practices in connection with its policy and premium

21  loans.  Compl. ¶ 29-30.  The propriety of granting declaratory relief in a diversity jurisdiction

22  action, presents a procedural question, to which the court applies federal law.  *Golden Eagle Ins.*

23  *Co. v. Travelers Cos.*, 103 F.3d 750, 752 (9th Cir. 1996), *overruled on other grounds by Gov't*

24  *Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998) (en banc); Schwarzer, Tashima &

25  Wagstaffe, *Fed. Prac. Guide: Fed. Civ. P. Before Trial* § 10.33.5 at 10-16 (TRG 2010).

26       Declaratory relief is not an independent cause of action or theory of recovery, only a

27  remedy.  Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.  Where a substantive cause of

28  action already exists in the complaint, a plaintiff cannot assert a declaratory relief claim as a

"superfluous second cause of action for the determination of identical issues." *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1189 (E.D. Cal. 2010) (internal quotation marks omitted).

To grant declaratory relief, a district court must find "actual controversy," which is "definite and concrete . . . real and substantial." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth,* 300 U.S. 227, 240-41 (1937).  Here, two declarations sought by Plaintiff seek the prayers embodied in his other causes of action: (1) Policy and premium loans made by Northwestern Mutual are subject to the requirements of Section 1916-2; (2) Northwestern Mutual may not enforce or collect, either directly or indirectly, and class members have no obligation to pay, either in cash, with applied dividends, through accumulated cash value or through death benefits, any interest accrued as of the date of judgment on policy or premium loans extended to class members. Compl. ¶¶ 29-30.

The declaratory relief claim establishes an actual controversy between the parties. Therefore, the Court **DENIES** Defendant's motion to dismiss Plaintiff's claim for declaratory relief.

## V.    CONCLUSION

For the foregoing reasons, the motion to dismiss is **DENIED**.

This order disposes of Docket No. 20.


**IT IS SO ORDERED**.


Dated:  February 9, 2016

_____
EDWARD M. CHEN
United States District Judge